Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4114 | **DATE** | 6/4/2002 |
| **CASE TITLE** | Dugan et al vs. R.J. Corman Railroad Co. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 6/19/2002 at 9:45 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** All pending motions (Docs 18-1 & 22-1) for summary judgment are granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 0 5 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 35 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

WILLIAM E. DUGAN, et al., )
)
Plaintiff, )
)
vs. ) 00 C 4114
)
R.J. CORMAN RAILROAD COMPANY )
and R.J. CORMAN DERAILMENT )
SERVICES, LLC, )
)
Defendants. )

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the parties' cross motions for summary judgment. For the reasons set forth below, each motion is denied in part and granted in part.

### **BACKGROUND**

Defendant R.J. Corman Railroad Company/Material Sales ("Corman") owns and operates a facility in Gary, Indiana, which provides emergency services to railroads and industries that run their own rail facilities. From 1992 to 1999, Corman was a party to three successive collective bargaining agreements ("CBAs") with Local 150 of the International Union of Operating Engineers ("the Union") at the Gary facility. Under



the agreements, Corman was required to make pension and welfare contributions to the Midwest Operating Engineers Pension Trust Fund and the Midwest Operating Engineers Welfare Fund ("the Funds"). In September 2000 and May 2001, the Funds conducted two audits of Corman's payroll records to ensure that all contributions due had been made. The audit results showed a deficiency of over $350,000, prompting the trustees of the Fund to file this action to recover the unpaid contributions. By stipulation, the deficiency has been reduced to just under $265,000. The parties have now filed cross motions for summary judgment over the propriety of the audit results.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." <u>Celotex</u>, 477 U.S. at 325. Once the movant has met this burden, the non-

moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record–only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. Heder v. City of Two Rivers, 149 F. Supp. 2d 677, 683 (E.D. Wis. 2001). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996). With these principles in mind, we turn to the parties' motions.

**DISCUSSION**

This action is predicated on § 515 of ERISA. 29 U.S.C. § 1145. Under that provision, an employer who is obligated by a collective bargaining agreement to make contributions to a multiemployer plan must do so in accordance with the terms and conditions of the agreement. Id. Because plans such as the Funds are beneficiaries of but not signatories these agreements, they are entitled to rely on the language of the applicable terms to determine what contributions are due. Central States, Southeast and Southwest Pension Fund v. Gerber Truck Serv., 870 F.2d 1148, 1149, 1153-54 (7th Cir. 1989). Side agreements or understandings between the signatories cannot be used to alter the plain meaning of the contribution agreement. Central States, Southeast, Southwest Areas Pension Fund v. Transport, Inc., 183 F.3d 623, 628 (7th Cir. 1999).

At the outset, we address the Funds' contention that they are entitled to judgment as a matter of law as to the entirety of the audit because Corman has not produced sufficient evidence to rebut a presumption that the audit findings are correct. The shifting of the burden to the employer to disprove the accuracy of an audit, while popular in other circuits, is not the law here. Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking, 71 F.3d 1361, 1367 (7th Cir. 1995). A pension fund is entitled to summary judgment in situations such as this one only if the employer produces no evidence whatsoever to challenge the results of the audit. See

Laborers' Pension Fund v. Milco Construction, Inc., 2000 WL 1372846 (N.D. Ill. Sept. 22, 2000); Chicago Dist. Council of Carpenters Pension Fund v. P.M.Q.T., 169 F.R.D. 336 (1996). If, on the other hand, the employer produces any evidence that potentially calls the audit into question, the question becomes one of disputed fact and summary judgment is precluded. See Steve Gilbert Trucking, 71 F.3d 1361 (affidavit and deposition of employer offered to refute audit); Roofers' Union Pension Fund v. Komes, 2001 WL 641335 (N.D. Ill. June 4, 2001) (affidavit of defendant offered to contradict audit accuracy); Sullivan v. Aloisio, 1997 WL 587653 (N.D. Ill. Sept. 17, 1997) (same); Hanley v. Adam, 1998 WL 560282 (N.D. Ill. Aug. 26, 1998) (same); Chicago District Council of Carpenters Pension Fund v. S & M Exteriors, Inc., 1996 WL 327989 (N.D. Ill. June 12, 1996) (office manager's affidavit and notations on invoices sufficient to defeat summary judgment).

Corman has produced some evidence to contradict the audit, so a whole-cloth grant of summary judgment in favor of the Funds is inappropriate. We must therefore examine whether the disputed employees were part of the bargaining unit specified in and thus covered by the CBAs. According to the language of the CBAs, the relevant bargaining unit at the Gary facility encompassed "[a]ll full time, regular part time, and on-call heavy equipment operators, mechanics, laborers, and truck drivers employed out of the Employer's facility, including employees engaged in the servicing and

maintaining[1] of heavy equipment, excluding all other craft employees, office clerical employees, confidential employees, and managerial employees, guards and supervisors as defined by the [National Labor Relations Act]." Pls.' Stmt. of Material Facts, Exh. 3 at 2, Exh. 4 at 2, Exh. 5 at 2. A subsequent section of the CBAs clarifies that casual employees are not covered by the agreement and therefore comprise no part of the bargaining unit. Pls.' Stmt. of Material Facts, Exh. 3 at 5(A), Exh. 4 at 4, Exh. 5 at 4. Corman's practice was to make contributions for Union members' hours only. They do not directly argue that this was the appropriate way to calculate the proper level of contribution, but for the sake of clarity, we formally agree with the Funds that contributions were owed for anyone performing bargaining unit work, regardless of Union membership, unless they were explicitly excluded from coverage under the CBA. Central States, Southeast and Southwest Areas Pension Fund v. Joe McClelland, Inc., 23 F.3d 1256, 1258 (7th Cir. 1994); see also Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 1992 WL 175499 (N.D. Ill. July 20, 1992). The battle in this case therefore reduces to three disputed categories of

---

[1] The 1992-93 agreement read "maintenance." Pls.'s Stmt. of Material Facts, Exh. 3 at 2.

employees: casual employees, and assistant superintendents, and employees temporarily at the Gary facility but based out of another location.[2]

**Casual Employees**

According to the CBA, casual employees are "employees hired for a specific customer project."[3] The audit included contributions for hours worked by casual employees. The Funds contend that this inclusion was proper for two reasons: first, they focus on the work that casual employees performed and argue those employees were excluded from coverage only when they were working on derailment sites, not when they were performing other tasks at the Gary facility. They point to statements of the Union representative and Corman officers to the effect that those parties understood casual employees only worked at derailment sites. They propose that casual employees were only those who did not work at the Gary shop. Because the employees Corman listed as casual employees did work in and around the shop, the Funds insist that contributions were due for the hours they worked. In essence, the Funds attempt

---

[2]The disputed categories originally numbered four, but the Funds conceded in their response that they are not entitled to contributions for work that occurred before the effective date of the first CBA, trimming the fight down to the three areas discussed. Pls.' Memo. in Opp., at 10.

[3]The first CBA, which was effective from May 1992 to December 1993, limited the amount of work of any casual employee to 60 hours per month. The time constraint was removed from the later two agreements, but its presence or absence does not affect the issue of the work performed by a casual employee.

to supplement the definition given in the CBA, arguing that a casual employee to be one "who could not and did not perform shop work but is called by [Corman] specifically to work only on train derailments." Pls.' Resp. to ¶ 33 of Def.'s Stmt. of Material Facts.

Corman, by contrast, relies solely on the definition of "casual employee" given in the CBA. According to their view, an employee is considered casual if they are hired for a specific project and does not lose that status by performing work at the shop. The plain language of the CBA contains no indication of the refinement the Funds propose. Just as the employer cannot contract the coverage of the CBA through side agreements with the Union, neither can the Funds expand coverage beyond what is evidence by the language of the agreement. See Central States, Southeast, Southwest Areas Pension Fund v. Kroger Co., 226 F.3d 903, 911 (7th Cir. 2000); Transport, 183 F.3d at 628; Gerber Truck, 870 F.2d at 1153-54. Casual employees are unequivocally exempted from the contribution requirements of the CBA, and the hours that they worked did not correspond to a contribution obligation on Corman's part.

**Superintendents and Assistant Superintendents**

The next category of disputed employees involves certain superintendents and assistant superintendents. Corman argues that these employees are "supervisors" as that

- 8 -

term is defined in the National Labor Relations Act. 29 U.S.C. § 152(11).[4] On their face, all three CBAs exclude supervisors from coverage. In support of the contention that these employees were statutory supervisors, Corman asserts that superintendents oversee operations at the facility and at derailment sites; supervise workers; and hire, fire, and discipline workers. Def.'s Stmt. of Material Facts, ¶ 28. When a superintendent is not present, the assistant superintendent assumes all these duties. Id., ¶ 29. The Funds counter that these employees are not supervisors because they regularly perform bargaining unit work and that the supervision duties of assistant superintendents are merely routine. However, the affidavits to which they cite do not support their statements; they establish only that these employees performed tasks other than the duties unique to supervisors. It is well-settled that the exercise of statutory authority is all that is sufficient for an employee who is not a substitute for a statutory supervisor, not the frequent exercise of that authority, and not other work that the employee performs. E & L Transport Co. v. NLRB, 85 F.3d 1258, 1270 (7th Cir. 1996); American Diversified Foods, Inc. v. NLRB, 640 F.2d 893, 896 (7th Cir. 1981).

---

[4]Under the NLRA definition, the term "supervisor" connotes anyone with the authority "to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

Also, although they are not dispositive, the criteria carrying the most weight of all those given in § 152(11) are the power to effectively hire and fire. NLRB v. Winnebago Television Corp., 75 F.3d 1208, 1216 (7th Cir. 1996). The evidence to which Corman cites supports a conclusion that superintendents had this authority in addition to other trappings of supervisory power. The Funds have not provided any evidence to discount the accuracy of that description. In short, the superintendents had authority over other employees' job tenure and the conditions of their employment. This is sufficient to deem them supervisors under the NLRA. See Jansen v. Packaging Corp. of America 123 F.3d 490, 527 (7th Cir. 1997).

Unlike superintendents, assistant superintendents at Corman act in a supervisory capacity only when supervisors are otherwise unavailable. Def.'s Stmt. of Material Facts, ¶¶ 28, 29. When an employee exercises supervisory authority only when acting as a substitute for the actual holder of that authority, that employee is a supervisor within the meaning given by the NLRA only if the exercise of the authority is "regular and substantial." E & L Transport, 85 F.3d at 1270 (quoting Hexacomb Corp., 313 N.L.R.B. 983, 984 (1994)). In this case, there is a genuine issue of fact as to how often assistant superintendents exercised their substitute authority and to what extent their decisions were dispositive, rather than being subject to approval by a higher official. Winnebago., 75 F.3d at 1213-18; see also NLRB v. Joy Recovery Technology Corp.,

134 F.3d 1307, 1313-14 (7th Cir. 1998). The record in this case does not supply enough evidence to allow a determination whether assistant superintendents were supervisors, and the issue is not suited for resolution on summary judgment.

**Employees Temporarily Placed in Gary**

The last category disputed by the parties consists of employees temporarily assigned to work at the Gary facility. One, Mark Gannon, was a managerial employee and thus fell outside the scope of the CBAs. Five of the remaining employees were assistant superintendents; as stated in the previous section, without knowing more about the particulars of the duties they performed, we cannot properly assess whether they were also excluded from the bargaining unit.

The final four employees, Jason Ewart, Larry Hill, Bob Robinson, and Scott Raleigh, were operators, mechanics, or laborers. Despite the fact that these types of employees are clearly included in the bargaining unit, Corman argues that it was not required to make contributions for their work because they only worked at the Gary facility for a short time. However, there is nothing in the terms of the CBA that would support this distinction. The terms "full time," "regular part time," and "on-call" are not defined within the agreement, leading to the conclusion that the parties used them as they are typically understood. First Ins. Funding Corp. v. Federal Ins. Co., 284 F.3d 799, 805 (7th Cir. 2002). In other words, a full-time employee is one who works a

forty-hour week, and a part-time employee is one who works less than forty hours. See Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co. 73 F.3d 727, 730 (7th Cir. 1996). The audit records show that Ewart, Hill, and Robinson were employed at the Gary facility for a week each and worked at least 40 hours during that time. Because the CBA's definition does not dictate that a full-time employee must work for a minimum number of weeks to be covered by the agreement, these three employees qualify as full-time employees within the bargaining unit, and Corman was required to make appropriate contributions based on the work that they performed. In this case, Corman has not produced any evidence that would create an issue of fact as to whether Ewart, Hill, and Robinson were full-time employees when they worked at the Gary facility. See Nat'l Shopmen Pension Fund v. Burtman Iron Works, Inc., 148 F. Supp. 2d 60, 64 (D.D.C. 2001). Accordingly, the Funds' motion for summary judgment as to those employees is granted.

As for Raleigh, his stints with Corman were for 11 hours in June 1995 and 4.5 hours in January 1996, preventing him from being classified as a full time employee. The agreement does not specify what is required to be a "regular part-time" employee, but the designation does imply some sort of regular scheduled work. Whatever parameters that term actually indicates, two isolated short-term assignments over a seven-month period cannot be classified as regular scheduling at the Gary facility.

Similarly, the scarce nature of Raleigh's assignment to Gary as well as his regular location in Kentucky rules out the possibility that he was an on-call employee. Accordingly, Raleigh was not covered by the CBA, and Corman had no obligation to make contributions to the Fund on his behalf.

## CONCLUSION

Based on the foregoing analysis, the Funds' motion for summary judgment that employees temporarily assigned to Gary were covered under the CBAs is granted with respect to employees Ewart, Hill, and Robinson. The remainder of the Funds' motion is denied. Corman's motion for summary judgment that casual employees were not covered by the CBAs and with respect to employees Gannon and Raleigh is granted. The remainder of Corman's motion is denied.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Dated: JUN - 4 2002