# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4114 | **DATE** | 12/4/2002 |
| **CASE TITLE** | Dugan et al vs. R.J. Corman Railroad et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We find that the Plaintiff employees were "casual employees" ad defined by the 1996 CBA. Also, the 1996 CBA terminated on December 19, 1999, and we lack jurisdiction over the claims regarding contributions allegedly owed for Ricardo Lopez and Lutellis Duncan for work done after that date. We grant Corman's motion to strike Exhibit 8 containing the Wehrheim affidavit. We deny the motion to strike Exhibits 6 and 7 containing the affidavits of David A. Fagan and Judith A. Lukwinski. All matters in controversy having been resolved final judgment is hereby entered.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | DEC 0 5 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 52 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | SCT courtroom deputy's initials | 02 DEC -4 AM 11:12 U.S. DISTRICT COURT CLERK Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. DUGAN, et al., as Trustee of the MIDWEST OPERATING ENGINEERS WELFARE FUND and MIDWEST OPERATING ENGINEERS PENSION TRUST FUND, ) ) ) ) ) ) Plaintiffs, ) ) vs. ) ) R.J. CORMAN RAILROAD COMPANY, INC. ) and R.J. CORMAN DERAILMENT SERVICES, ) LLC, ) ) Defendants. ) | | DOCKETED DEC 0 5 2002  00 C 4114 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

On June 4, 2002, we granted in part and denied in part cross-motions for summary judgment in this case. The parties have since resolved all issues remaining in this case through settlement with the exception of: 1) whether certain individual employees were or were not "casual employees" and thus whether Defendants should have made contributions on behalf of those employees, and 2) whether contributions are due on behalf of Ricardo Lopez and Lutellis Duncan for their employment after December 19, 1999. (R. 1). The parties have agreed to submit a unified stipulation of

facts and allow this court to make findings of fact and conclusions of law based upon that stipulated record. We have reviewed the record submitted and enter the following findings.

**FINDINGS OF FACT**

1. R.J. Corman Derailment Services, and its predecessor, ("Corman") is and were engaged in the business of providing emergency services to railroads and industries which operate their own rail facilities. (R. 3.).

2. The Plaintiff welfare and pension funds ("the Funds") are multi-employer funds established by the International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150") and certain multi-employer bargaining associations. The obligation to contribute to those funds is set forth in various multi and single employer collective bargaining agreements to which Local 150 is a party. Local 150 and the Gary divisions of Corman were parties to three such single employer collective bargaining agreements. (R. 4).

3. The first collective bargaining agreement between Plaintiffs and Corman was effective in 1992 ("1992 CBA"). The second agreement was effective in 1993 ("1993 CBA"). The third agreement was effective in 1996 ("1996 CBA"). Each of these agreements required that Corman make contributions on behalf of employees for

a certain specified minimum and maximum number of hours and in certain stated amounts to the Midwest Operating Engineers Welfare and Pension Funds. (R. 4).

4. Each of the collective bargaining agreements between Plaintiffs and Corman contained a provision that excluded "casual employees" from coverage under certain provisions of the contract, including the obligation to make contributions to the Funds. (R.4-5).

5. In the 1996 CBA "casual employees" are defined as: "employees hired for a specific customer project." The 1996 CBA also states:

> Nothing in this section is to prevent casual employees from future employment on customer projects. Furthermore, no casual employee will be employed if such employment causes a reduction or prevents an increase in hours of any present full-time and/or regular part-time employee. Also, no casual employees shall be employed as a means of preventing an increase in the number of full-time and/or regular part-time employees.

(R. 8).

6. In the 1992 CBA there was a 60-hour per month or per specific customer project limit on the amount of work a "casual employee" could perform. After negotiations in 1993, the union agreed to remove the working hours limit from the casual employee section because it was difficult to find casuals willing to be available for emergency calls when their income would be so limited. Afterwards there was no set maximum number of hours that a casual employee could work on a given month or on a specific project. (R.7).

7.  The 1996 CBA stated that it was to continue in effect until December 19, 1999, and from year to year thereafter unless either party gave timely notice to change or terminate the agreement. Such notice was given prior to December 19, 1999. Negotiations for a new contract began in November 1999, and continued until May 2000. After December 19, 1999, during the time that negotiations continued and thereafter through July 2000, Corman continued to submit its monthly contribution report and to pay contributions to the Funds for the listed employees. Corman withdrew recognition from Local 150 in May 2000. Negotiations thereafter ceased and Local 150 commenced a strike against Corman in mid June 2000. Corman closed its Gary Division on June 29, 2000, and the strike continues. (R.5).

8.  Corman did not make contributions to the Funds for certain months because it believed that the following employees were "casual employees" as defined by the 1996 CBA: Trent Buffington, Tony Congress, Lutellis Duncan, Dave Eichelberger, Elliot Expose, Daniel Fairchild, Alvaro Gomez, Walter Green, Darrell Hill, Mitchell Hoffman, Charles Hunter, Richard Kratz, Dan Lively, Dave Matthews, Frank Otto, Jason Phillips, Chester Sikora, Rex Simpson, Dennis Smith, Allen Stevens, Jr., Tim Taylor, William Waters, Jr., Martin Williams, and Wayne Winkler(collectively referred to as "Plaintiff employees"). (R. 10-26).

9. Corman did not make contributions on behalf of Ricardo Lopez or Lutellis Duncan for the months of January 2000 through July 2000. Corman believed it had no obligation to make contributions for that period because the 1996 CBA states that the 1996 CBA was to continue in effect until December 19, 1999 and from year to year thereafter unless either party gave timely notice to change or terminate the agreement. (R. 12, 19).

10. Corman made contributions through July 2000 for employees other than Ricardo Lopez and employees deemed "casual employees." (R. 19).

11. After December 1999, Corman made contributions for employees and submitted monthly contributions reports signed by an authorized human resources manager with language on it referring to the "current applicable collective bargaining agreement." (Ex. 8A).

## CONCLUSIONS OF LAW

1. Plaintiffs argue that because the Plaintiff employees all consistently worked full-time over a long period of time they are not casual employees. Plaintiffs place a great deal of emphasis on the number of hours worked by the Plaintiff employees and the continued duration of that employment. According to Plaintiffs, this "pattern for each employee shows continuity of employment on a full time or regular part time basis," (P. Mem. 3), which is inconsistent with the definition of a "casual employee."

-5-

Plaintiffs also claim that Corman in its daily operations used the term "casual employee" synonymously with the term "non-union member." In addition Plaintiffs provide us with the definition of "casual employment" from Black's Law Dictionary and point out that regular full-time work does not meet that definition.

We are not dealing here with a contract term that the parties neglected to mention or define. Neither the hours worked by the Plaintiff employees, nor their union status, nor a definition in the legal dictionary is determinative on this issue. Plaintiffs would have us make the determination of the Plaintiff employees' status based exclusively on abstract notions of common sense and fairness. However, the issue before us concerns contributions allegedly owed under the 1996 CBA. The rights of the parties in this case are governed by that written agreement and we shall be guided by the express language in that agreement.

First of all there is no mention of a restriction on the working hours for casual employees in the 1996 CBA and it was not intended that such a restriction be implied because the parties specifically negotiated over such a restriction and agreed to have it removed from the 1993 CBA. Under the 1996 CBA there are three possible violations of the CBA regarding employees that were deemed by Corman as "casual employees." First, Corman violated the CBA if it did not make contributions for employees that were not hired for a specific customer project and thus were not in fact

"casual employees." Second, Corman could not employ "casual employees" if it "cause[d] a reduction or prevent[ed] an increase in hours of any present full-time and/or regular part-time employee." Third, "no casual employees [could] be employed as a means of preventing an increase in the number of full-time and/or regular part-time employees."

Plaintiffs do not claim that Corman violated the 1996 CBA in the second or third manner. Plaintiffs argue that it can be inferred from the long term employment and full time hours worked by the Plaintiff employees that they were not hired for a specific customer project and thus that they were not "casual employees." We do not agree that such an inference is reasonable based on this evidence or on any other evidence submitted by Plaintiffs.

Plaintiffs also argue that there are employees designated as "on call" employees and that an "on call" employee cannot be a "casual employee" because if an employee is "on call", then he or she is regularly available when needed. This argument is based on a common sense meaning of the terms involved. There is no such "on call" designation in the 1996 CBA, and Plaintiffs' argument is made without any reference to or support from the 1996 CBA. As we stated in our prior opinion, we will not allow Plaintiffs to extraneously supplement the definition of a "casual employee" as defined in the 1996 CBA to expand coverage beyond what is evidenced by the language of the

agreement. Therefore, we find that the Plaintiff employees were "casual employees" under the 1996 CBA.

2.   Plaintiffs claim that Corman owes contributions for Ricardo Lopez for work he did between January 2000 and July 2000. The 1996 CBA specified that it expired on December 19, 1999 unless the parties agreed that the agreement would continue in effect. Corman asserts that we lack jurisdiction over post-December 1999 claims. A federal court lacks jurisdiction over contribution claims involving the period after the expiration of a collective bargaining agreement and during the interim negotiations for a new agreement when the parties have a duty to maintain a status quo in the exercise of their duty to bargain in good faith. *Laborers Health & Welfare Trust v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 542 (1988). The NLRB has exclusive jurisdiction over any claims concerning contributions during that interim status quo period. *Id.*

Plaintiffs point to the language in the 1996 CBA that provides that the CBA will continue after December 19, 1999 "from year to year thereafter unless either party gave timely notice to change or terminate the Agreement." Plaintiffs assert that Corman impliedly agreed that the 1996 CBA was to continue in effect after December 19, 1999 because Corman continued to make contributions for employees other than Lopez through July 2000 and because Corman submitted a monthly contributions report after

December 1999 with language on the it referring to the "current applicable collective bargaining agreement."

We are not convinced that there is sufficient evidence to conclude that Corman impliedly agreed that the 1996 CBA agreement was to continue in effect after December 19, 1999. The language on the post-December 1999 contribution reports was merely boilerplate language at the bottom of the report and there is no indication that the form was not the same form used prior to December 1999, or that it was not an inadvertent mistake to use the form after December 1999, or that it was not a matter of convenience. Also, the 1996 CBA allows the agreement to continue from year to year with the assent of all parties, and that will occur "unless either party [gives] timely notice to change or terminate the agreement." Plaintiffs admit that such notice was given. (R. 5). Finally, after December 1999, Corman and the union were in negotiations up until May 2000, and a strike began in mid June 2000. Although, payments were made after negotiations ended through July 2000, we do not think that is sufficient evidence to conclude that Corman intended the 1996 CBA to continue in effect. We find that the 1996 CBA did terminate on December 19, 1999. Therefore, we do not have jurisdiction over the claims regarding the disputed contributions for Ricardo Lopez for the period after December 19, 1999. For the same reasons we do

-9-

not have jurisdiction over any post-December 19, 1999 contribution disputes for Lutellis Duncan.

Plaintiffs also claim that Corman entered into a trust agreement under which Corman was obligated to make contributions, but unlike the 1996 CBA, Corman allegedly never indicated that it was terminating the trust agreement after December 1999. (Ex. 8). Plaintiffs provide only select quotations from the trust agreement in Exhibit 8. Corman claims that the quotations are improperly characterized by Plaintiffs and Corman has moved to strike Exhibit 8. We have discretion in determining whether grant a motion to strike. *See Stinnett v. Iron Works Gym/Executive health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002) (stating that a motion to strike is reviewed under the abuse of discretion standard). We find that it would not be proper to rely on the trust quotations provided by Plaintiffs in making our determination regarding the trust agreement and that the quotations must in fairness be considered in the context of the entire agreement. Therefore, we grant the motion to strike Exhibit 8 containing the Wehrheim affidavit. We deny the motion to strike the affidavits of David A. Fagan and Judith A. Lukwinski.

## CONCLUSION

Based on the foregoing we find that the Plaintiff employees were "casual employees" as defined by the 1996 CBA. Also, the 1996 CBA terminated on

December 19, 1999, and we lack jurisdiction over the claims regarding contributions allegedly owed for Ricardo Lopez and Lutellis Duncan for work done after that date. We grant Corman's motion to strike Exhibit 8 containing the Wehrheim affidavit. We deny the motion to strike Exhibits 6 and 7 containing the affidavits of David A. Fagan and Judith A. Lukwinski.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: DEC - 4 2002