Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4114 | **DATE** | March 9, 2004 |
| **CASE TITLE** | Dugan et al vs. R.J. Corman Co/Material Sales et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Plaintiffs' petition for audit fees, interest, liquidated damages, costs and attorneys' fees is granted in part and denied in part. Corman is ordered to pay $168,148 to the Funds.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 1 0 2004 | |
| | Notified counsel by telephone. | | date docketed | 73 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SCT | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM E. DUGAN; DAVID SNELTEN; STEVEN M. CISCO; JOHN E. KENNEY, JR.; JOSEPH P. WARD; DONALD W. DVORAK; RAYMOND CONNORS; MAMON POWERS, JR., as Trustees of the Midwest Operating Engineers Welfare Fund; LAVERNE S. BROWN; ANGELO DIPAOLO; DAVID SNELTEN; JAMES P. NESS, as Trustees of the Local 150, I.U.O.E. Vacation Savings Plan; MONTY HORNE, as Trustee of the Operating Engineers Local 150 Apprenticeship Fund, <br><br> Plaintiffs, <br><br> vs. <br><br> R.J. CORMAN COMPANY/ MATERIAL SALES, also known as R.J. Corman Co., a Kentucky corporation; R.J. CORMAN RAILROAD DERAILMENT SERVICES, LLC., <br><br> Defendants. | DOCKETED <br> MAR 1 0 2004 <br><br><br> 00 C 4114 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Plaintiff William Dugan's ("Dugan") petition for audit fees, interest, liquidated damages, costs, and attorneys' fees. For the reasons set forth below, the petition is granted in part and denied in part.

73

## BACKGROUND

The facts of this case are outlined in our earlier decisions of <u>Dugan v. R.J. Corman R.R. Co., Inc.</u>, 2002 WL 1263989 (N.D. Ill. 2002); 2002 WL 31749189 (N.D. Ill. 2002), and need not be reiterated in detail. In short, Dugan and other trustees of two pension funds (the "Funds") sued an employer, Defendant R.J. Corman Railroad Co. ("Corman"), under ERISA for failing to make contributions to the Funds in accordance with collective bargaining agreements between Corman and its employees. Pursuant to the Seventh Circuit's decision in <u>Dugan v. R.J. Corman R.R. Co.</u>, 344 F.3d 662 (7th Cir. 2003), which found Corman liable to the Funds for delinquent payments covering twenty-four employees, we ordered Corman to contribute $117,219.54 to the Funds. Order (Jan. 15, 2004). Relying on ERISA provision 29 U.S.C. § 1132(g)(2) and language of the agreements establishing the Funds, the Funds now petition the court for audit fees, interest, liquidated damages, costs, and attorneys' fees totaling $193,498.25.

## DISCUSSION

The Funds base their petition for fees, costs, and the like on two sources, ERISA and the agreements between Corman and the Funds that establish the obligations of Corman concerning contributions to the Funds. The relevant section of ERISA, 29 U.S.C. § 1132(g), reads as follows:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions . . ..
>
> > (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
> >
> > > **(A)** the unpaid contributions,
> > > **(B** interest on the unpaid contributions,
> > > **(C)** an amount equal to the greater of–
> > >
> > > > **(i)** interest on the unpaid contributions, or
> > > >
> > > > **(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> > >
> > > **(D)** reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> > >
> > > **(E)** such other legal or equitable relief as the court deems appropriate.

Relying on this provision of ERISA, the Funds argue that they are entitled to attorneys' fees, costs, interest on contributions, and liquidated damages. We will treat each request separately below.

**Attorneys' Fees**

The Funds seek attorneys' fees in the amount of $126,751.25. Corman objects on three grounds, the first advancing that this lawsuit was brought for an improper

purpose and we should therefore use our discretion to limit the Funds' award to nominal attorneys' fees. Corman argues that this litigation was initiated solely to strengthen the bargaining position of the Funds' beneficiaries, Corman's union employees who were striking in order to secure a new collective bargaining agreement at the time this lawsuit was filed. Corman asserts that the trustees of the Funds brought this lawsuit in order to benefit the union, rather than the Funds' beneficiaries, and thus breached their fiduciary duties to the beneficiaries. Accordingly, Corman contends that we should use our discretion to reduce the fees award.

We find this argument deficient for two reasons. The first is that the Funds have prevailed in this litigation, which ultimately determined that Corman had failed to make $117,219.54 in requisite contributions to the Funds. This is money that will be distributed to the Fund's beneficiaries so we do not see how the Funds breached any fiduciary duties. Furthermore, as the Funds proved successful in their enforcement suit for delinquent contributions under 29 U.S.C. § 1145, the awarding of fees is mandatory and non-discretionary. 29 U.S.C. § 1132(g)(2)(D); Plumbers' Pension Fund, Local 130, U.A. v. Domas Mechanical Contractors, Inc., 778 F.2d 1266, 1271 (7th Cir. 1985). Because we lack the discretion not to award attorneys' fees under 29 U.S.C. 1132(g)(2)(D), we are left to determine whether the Funds' request for fees is "reasonable." Id., Moriarty v. Svec, 233 F.3d 955, 963 (7th Cir. 2000).

Corman first alleges that the Funds' request for fees is unreasonable because the Funds should only be entitled to fees for work performed prior to April 14, 2002, the date when the parties reached a stipulation regarding the number of Corman employees for whom Corman should have made contributions to the Funds. According to Corman, as a result of the stipulation and our summary judgment opinion, the Funds withdrew claims on behalf of fourteen employees who worked for Corman prior to the 1992 collective bargaining agreement establishing the Funds and nine other Corman employees who were never subject to the agreement's terms. Corman seems to be suggesting that the Funds' legal expenses prior to the stipulation were unmerited since they involved claims of some employees that were later excluded from the suit's scope. However, Corman does not address the fact that twenty-four Corman employees were not withdrawn following the stipulation for whom it was later determined that Corman did not make contributions. For this reason, we cannot find that the Funds' pre-stipulation legal expenses, which resulted in twenty-four beneficiaries of the Funds receiving contributions that would otherwise have been withheld, were unreasonable simply because all the Corman employees initially identified by the Funds were not ultimately held to be eligible for contributions.

Corman also charges that the Funds' attorneys' fees request is unreasonable in that its expenses, $126,751.25 resulting from 685.25 billable hours, were the product

of "over-lawyering." In short, Corman believes that the Funds' devoted far too many resources towards the prosecution of its case. In support of its assertions, Corman points to (1) the total amount of hours billed as compared to the relatively simple procedural and factual nature of this case (2) the nineteen attorneys or staff who at one time or another billed on the Funds' behalf, (3) the extraordinarily large amount of time billed to certain tasks (such as taking twenty hours to abstract a ninety-one page deposition), and (4) the fact that the Funds' attorneys included on its bill work apparently done on behalf of a different client (a union representing Corman employees).

While we agree with the Funds that it is not uncommon for ERISA delinquent contribution cases to result in attorneys' fees awards that are higher than the underlying judgment, we also share Corman's belief that the Funds' legal expenses in this case are excessive. Based on our familiarity adjudicating ERISA disputes and after reviewing (1) the complexity of the legal issues involved, (2) the amount of money at stake, (3) the number of Corman employees who were the subject of the delinquent contribution claims, (4) the procedural history of this case, and (5) what the Funds admits as the improper inclusion of work performed for other clients on its bill, we find that 685.25 billable hours was an unreasonable amount of resources to be devoted to this litigation. Because we are not expected to scour every entry in the Funds'

twelve-page legal bill, we may reduce the Funds' attorneys' fees by a fixed amount "as a practical means of trimming fat from" its fees application. Tamazzoli v. Sheedy, 804 F.2d 93, 98 (7th Cir. 1986). In our discretion and experience we feel that a reasonable amount of professional legal services that should have been devoted to this case is twenty percent lower than the Funds' figure of 685.25 billable hours. As Corman does not object to the hourly rates charged by the Funds' attorneys, we will accordingly reduce their attorneys' fees request for $126,751.25 by twenty percent and order that Corman contribute $101,401 in fees.

**Costs**

The Funds' request for $3,672.38 in costs incurred as part of this litigation is unopposed by Corman and therefore granted.

**Interest**

The Funds' request for seven percent interest on the contributions previously awarded, in the amount of $8,205.37, is unopposed by Corman and therefore granted.

**Liquidated Damages**

The Funds request a liquidated damages award in the amount of $23,443.91, which they calculate as twenty percent of the contributions that we ordered paid to the Funds. Corman alleges that this request fails to take into account the difference in the wording between the Agreement and Declaration of Trust of the Midwest Operating

Engineers Pension Trust Fund (the "Pension Fund Agreement") and the Agreement and Declaration of Trust of the Midwest Operating Engineers Welfare Fund (the "Welfare Fund Agreement"). Corman does not dispute that under the Pension Fund Agreement, it is required to pay $7,979.97 (twenty percent of $39,899.84).

Corman argues that based on the wording of the Welfare Fund Agreement, which it quotes as authorizing the Welfare Fund Trustees to "assess and receive from such Employer as liquidated damages an amount equal to ten (10%) percent . . . of the amount found to be delinquent . . .," Welfare Fund Agreement, Part III, Art. III, § 1(b), it is only required to pay ten percent of the Welfare Fund's delinquent contributions. What Corman's quote leaves out though, by use of the first ellipsis, are the words "and/or such additional amounts as may be authorized by law." Id. The Welfare Fund Agreement clearly allows the Funds to recover as liquidated damages any percentage of the delinquent payments "as may be authorized by law." Id. The law in question is ERISA, 29 U.S.C. § 1132(g)(2)(C)(ii), which authorizes the award of "liquidated damages provided under the plan in an amount not in excess of 20 percent" of the delinquent contributions. We will therefore grant the Funds' request for liquidated damages in the amount of $15,463.94 (twenty percent of $77,319.70) pursuant to the Welfare Fund Agreement.

The total amount of liquidated damages to be paid to the Funds is $23,443.91.

**Audit Fees**

The Funds are seeking audit fees from Corman in the amount of $31,425.34. Under the Pension Fund Agreement (Part III, Art. III § 1(A)(1)) and the Welfare Fund Agreement (Part III, Art. III § 1(A)), in the event that Corman is found to have failed to make requisite contributions to the Funds, the Funds are entitled to receive "all costs of the audit" that uncovers a contribution deficiency. Corman describes the Funds' audits of its employment records to be "fishing expeditions" that breached its fiduciary duties to the Funds' beneficiaries. However, Corman cites no authority in support of its claims that the audit fees are unreasonable. Nor does Corman attempt to rebut the affidavit of the Funds' auditor, which alleges that its fees were reasonable. While Corman challenges the rationale behind the audits, they did result in the identification and payment of delinquent amounts to the Funds. We therefore see no reason to deviate from the clear and express language of the Welfare and Pension Fund Agreements. Corman is accordingly ordered to pay $31,425.34 in audit fees.

## CONCLUSION

Based on the foregoing analysis, Corman is ordered to pay $168,148 to the Funds.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: MAR - 9 2004

-9-